# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO. 5:17-CV-79 (MTT) ) |
| LAURA WHITAKER, *et al.*, | ) ) |
| Defendants. | ) ) ) |

## ORDER

In this declaratory judgment action, Plaintiff Travelers Property Casualty Insurance Company has moved for summary judgment on the issue of whether Defendants Laura Whitaker, individually, and Laura and Jeffrey Whitaker, on behalf of their minor child (hereafter the "Whitakers" to distinguish the parents and child from the grandparents), are entitled to uninsured motorist coverage under the automobile insurance policy issued by Travelers.[1] Doc. 34. For the following reasons, the motion is **GRANTED**.

## I. BACKGROUND[2]

On August 20, 2016, Laura Whitaker was driving a 2012 Nissan Rogue with her sixteen-month-old daughter, when they were struck by another vehicle. Doc. 37 at 4. The Whitakers contend that the accident was caused by the driver of that vehicle and that Laura and her child suffered personal injuries as a result. *Id.* At the time of the accident, the 2012 Nissan Rogue was insured with Cincinnati Insurance, Laura's

---

[1] As discussed below, the parties now agree that the only issue is whether the minor child qualifies as an "insured" under the insurance policy. Docs. 37 at 3-4; 38 at 2.

[2] Unless stated otherwise, the facts are undisputed.

insurer. *Id.* at 4, 6. Nor were Laura and her child named insureds under the Travelers policy; rather, the Travelers policy was issued to J. Greg and Linda Whitaker, the parents in-laws and grandparents of Laura and her child. *Id.*; Doc. 34-2 ¶ 5.

The Travelers policy provides "insureds" uninsured motorist coverage in the amount of $250,000 for each person and $500,000 for each accident, subject to the terms, conditions and limitations of the policy. Doc. 1-2 at 2. The policy defines "insured," in pertinent part, as "You or any 'resident relative,'" with "you" referring to the named insureds listed on the declarations page. *Id.* "Resident relative" is defined as:

> a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child. Your unmarried dependent children, wards, and foster children while temporarily away from home will be considered residents if they intend to resume residing in your household.

*Id.* at 24.

At the time of the accident, Laura, her husband, Jeffrey, and their sixteen-month-old daughter, were living in a cabin on property located at 11431 Miami Valley Road in Fort Valley, Georgia. Docs. 34-2 ¶ 19; 37 at 8. The cabin and the property on which it was located were owned by Greg and Linda. Doc. 34-2 ¶ 20. Greg and Linda also owned on that property another house, which the parties call the "main house," in which Greg and Linda lived. *Id.* ¶ 21. While the cabin was located on the same property and shared the same address as the main mouse, the two were separate buildings and received separate utility bills, which were in Greg and Linda's name. *Id.* ¶¶ 22-23, 38.

Laura, Jeffrey, and their daughter moved into the cabin in May 2016, after they had sold their previous house in Leslie, Georgia, and after Laura and Jeffrey had concluded their jobs as teachers for the school year. *Id.* ¶¶ 25, 28, 30. The Whitakers neither signed a lease nor paid rent to live in the cabin. *Id.* ¶¶ 26, 35. They also did not

intend to live in the cabin permanently. *Id.* ¶ 34. Instead, their plan was to stay in the cabin while their new house was under construction. *Id.* ¶¶ 31, 33. During their stay, Laura and Jeffrey supported themselves and claimed their child as a dependent on their 2016 tax return. *Id.* ¶¶ 45-46. For example, Laura and Jeffrey reimbursed Linda for paying the utility bills for the cabin. *Id.* ¶ 39. Laura and Jeffrey also paid for a separate internet provider from the main house, with the bill going directly to them. *Id.* ¶ 40. Though the two families would occasionally eat meals together either at the main house or the cabin, Laura and Jeffrey primarily bought their own groceries and cooked their own meals in the cabin, which had its own kitchen. *Id.* ¶¶ 41, 43-44. When Laura and Jeffrey were having meals with just their child, they would eat at the cabin. *Id.* ¶ 42. In sum, at the time of the accident, Laura, Jeffrey, and their child "had an independent family arrangement in the Cabin." *Id.* ¶ 48.

Although maintaining an independent family arrangement in the cabin, their daughter stayed with her grandparents, particularly Linda, a retired dentist, at the main house "most everyday" before the accident. Docs. 35-1 at 20:9-11; 35-3 at 11:2-7; 37-3 ¶ 8. According to Laura, it was "convenient" to have her in-laws nearby to watch her child. Doc. 35-1 at 27:4-6. But because the child was so young, she "only stayed overnight a few times." Doc. 37-3 ¶ 7. At the main house, the grandparents had for the child a nursery, a bedroom, a playroom with toys, clothes, and baby food. *Id.* ¶¶ 10-13. Following the accident, there was a period of time where the child had to physically heal from her accident-related injuries; however, once she was able, the child resumed staying, and currently stays, with her grandparents during "most everyday" at their

home. *Id.* ¶¶ 8-9. The Whitakers eventually moved into their new house in Fort Valley in November 2017.[3] *Id.* ¶ 49.

On January 10, 2017, the Whitakers and their lawyer sent a letter to Travelers, demanding that Travelers pay its $250,000 limit of uninsured motorist coverage under the Travelers policy to resolve claims for injuries sustained by the child as a result of the August 20, 2016 accident. Doc. 34-2 ¶ 14. Specifically, the letter detailed that the child incurred special damages of $402,661.00. *Id.* ¶ 15. On February 22, 2017, Travelers filed this declaratory judgment action to determine its obligation, if any, to provide uninsured motorist coverage for the child's injuries. *Id.* ¶ 16.

## II. MOTION FOR SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)). The moving party "simply may show . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (internal quotation marks and citation omitted). "Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of

---

[3] There is conflicting testimony regarding when the Whitakers moved into their new house. In Linda's, the grandmother's, deposition testimony, she stated the Whitakers moved into their new house in November of 2017 while Laura testified at her deposition that they moved in September. *Compare* Doc. 35-3 at 16:24-17:7, *with* Doc. 35-1 at 18:8-12. But the point is, the Whitakers could not move into their new house until late 2017 due to the wreck. Doc. 35-3 at 23:3-9.

proof at trial." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224-25 (11th Cir. 2002) (citing *Celotex Corp.*, 477 U.S. at 324).

In determining whether a genuine dispute of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A material fact is any fact relevant or necessary to the outcome of the suit. *Id.* at 248. And a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### III. DISCUSSION

In its motion for summary judgment, Travelers argues that the Whitakers are not entitled to uninsured motorist benefits under the grandparents' Travelers policy because, at the time of the accident, they resided in a separate household from the named insureds. Doc. 34-1 at 10. In response, the Whitakers first point out that their claim against Travelers "is only for the injuries and damages sustained by the minor child." Doc. 37 at 3. The Whitakers then argue that summary judgment should not be granted because there is a genuine issue of material fact as to whether the child had more than one residence. *Id.* at 3-4. This "dual residency" argument pertaining only to the child was raised for the first time in response to Travelers's motion.[4] That is significant because the Whitakers initially argued something different. Specifically, in their motion to amend their answer (Doc. 31), the Whitakers argued: "[t]he compound consists of a main house occupied by Grandparents/insureds, and also a separate cabin, in which the Whitakers were living. Despite living in two separate structures upon

---

[4] This no doubt explains why Laura, Jeffrey, and Linda were not asked in their depositions about whether the child had a separate living arrangement with her grandparents at the main house. *See generally* Docs. 35-1; 35-2; 35-3.

- 5 -

the compound, all were a single domestic establishment under the singular management of Grandparents/insureds, and therefore a single household." Doc. 31-5 at 12. Thus, the Whitakers' initial theory, which they have now abandoned, was that they, "as part of the single domestic establishment of Grandparents/insureds," were resident relatives covered by the Travelers policy.[5] *Id.* at 13.

The Court now considers the Whitakers' sole argument: whether their daughter was an insured under the Travelers policy based on having dual residency under Georgia law.[6]

The Travelers policy provides, in pertinent part, that an insured includes "any resident relative" of the named insureds. Doc. 1-2 at 15. The policy defines "resident relative" as "a person related to [the named insureds] by blood, marriage or adoption who is a resident of [the named insureds'] household." *Id.* at 24. Given the plain language of this definition, it is clear, and the parties do not dispute, that the child is related to the named insureds "by blood, marriage or adoption." The only question, therefore, is whether the child was a resident of her grandparents' household at the time of the accident. Docs. 37 at 3-4; 38 at 5.

In Georgia, questions of domicile and residence are "mixed questions of law and fact that are ordinarily for a [fact finder] to determine." *Geiger v. Georgia Farm Bureau*

---

[5] Even if the Whitakers had maintained their initial argument, the uncontroverted facts in this case make abundantly clear that the Whitakers resided in a separate household for purposes of insurance coverage.

[6] The parties rightly agree that, because the Travelers policy was issued to Greg and Linda Whitaker in Georgia, Georgia law governs this declaratory judgment action, which is brought under diversity subject matter jurisdiction. Docs. 34-1; 37; *see General Telephone Co. v. Trimm*, 252 Ga. 95, 96, 311 S.E.2d 460, 462 (1984) (holding that under Georgia's choice of law rules, insurance contracts are governed by the law of the state in which the contract was made). In Georgia, the interpretation of an insurance policy is generally "a question of law," to which courts apply the "ordinary rules of contract construction." O.C.G.A. § 13-2-1; *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 269 Ga. 326, 327, 498 S.E.2d 492, 494 (1998) (citation omitted).

*Mut. Ins. Co.*, 305 Ga. App. 399, 402, 699 S.E.2d 571, 574 (2010) (citations and alteration omitted). "In deciding whether a relative is a resident of the named insured's household, [courts] generally consider both the language of the insurance policy and the aggregate details of the family's living arrangements." *Daniel v. Allstate Ins. Co.*, 290 Ga. App. 898, 902, 660 S.E.2d 765, 769 (2008) (quotation marks and citation omitted).

While the Travelers policy does not define "resident of a household," the Georgia Court of Appeals has held that "the ordinary and accepted meaning of the phrase 'one residing in the same household' in an insurance policy pertains to one who physically maintains permanent or frequently utilized living accommodations." *Id.* at 902, 660 S.E.2d at 769 (citation and alterations omitted). Physically maintaining living accommodations in the insured's home, however, is one, but not the sole, consideration; there must be "[m]ore than mere physical presence and transient visitation." *Rainey v. State Farm Mut. Auto. Ins. Co.*, 217 Ga. App. 618, 620, 458 S.E.2d 411, 413 (1995).

The policy also does not define "household." But the Georgia Court of Appeals has long defined "household" as "a domestic establishment including the members of a family and others who live under the same roof and also as a family living together, where family means a collective body of persons who live in one house or within the same curtilage[7] and under one head or management." *McCullough v. Reyes*, 287 Ga. App. 483, 488, 651 S.E.2d 810, 814-15 (2007) (citing cases) (quotation marks and citations omitted). Living under a common roof is not a controlling element in determining whether a relative is a resident of the insured's household; rather, again,

---

[7] "The term 'curtilage,' ... generally refers to '[t]he land or yard adjoining a house, [usually] within an enclosure.'" *McCullough v. Reyes*, 287 Ga. App. 483, 488-89, 651 S.E.2d 810, 815 (2007) (quoting Black's Law Dictionary).

the aggregate details of the family's living arrangements must be considered. *McCullough*, 287 Ga. App. at 489, 651 S.E.2d at 815 (quotation marks and citations omitted). "Of critical importance to such an analysis is whether the family members have established and maintained separate households under different managements." *Id.* (quotation marks and citations omitted).

For example, in *Rainey*, the plaintiff sued his daughter's insurance company, seeking benefits under the uninsured motorist coverage of her policy. 217 Ga. App. at 619, 458 S.E.2d at 412. Even though the plaintiff testified that he stayed at his daughter's house three nights a week, the Georgia Court of Appeals upheld summary judgment in favor of the insurer, because the evidence clearly established that the plaintiff maintained a separate household in a different apartment at the time of the accident. *Id.* at 620, 458 S.E.2d at 413. This evidence included his tax returns and cancelled checks, which reflected that he lived in a separate residence. *Id.* Notably, the plaintiff never stated in either his affidavit or deposition that he lived with his daughter when the accident occurred. *Id.*

Another important factor in determining whether an individual is a resident of an insured's household is intent. *Sanders v. Georgia Farm Bureau Mut. Ins. Co.*, 182 Ga. App. 279, 280, 355 S.E.2d 705, 706 (1987) (individual's "intent to live in his father's house, even if only for the time being, was sufficient to establish his residence there"); *Rainey*, 217 Ga. App. at 619, 458 S.E.2d at 412 ("A household relationship may end if one of the relatives has demonstrated an intent to remove himself from the household and has taken some action toward doing so."). Courts must consider the intent of not just the alleged resident but that of each member of the household. *See Tuttle v. America First Ins. Co.*, 187 Ga. App. 68, 69, 369 S.E.2d 342, 343-44 (1988) (holding

that the intent of a 26-year-old daughter was irrelevant in determining residency and affirming summary judgment in favor of an insurance company, when the daughter's father firmly believed she was not a resident of his home and had the legal authority to exclude her from his household if he wanted).

Here, when considering the aggregate details of the child's family living arrangements and the evidence before the Court, it is clear the Whitakers' daughter was not a resident in her grandparents' home at the time of the accident.[8] First, as in *Rainey*, despite the child staying at her grandparents' home "most everyday" and spending the night there a few times, the evidence clearly establishes that the child was merely a "transient visitor" who maintained an independent family arrangement in the cabin with her parents. Doc. 34-2 ¶ 48; *Rainey*, 217 Ga. App. at 620, 458 S.E.2d at 413 ("It is clear from our review of the cases, however, that physically maintaining living accommodations in the insured's home is one, but not the sole, consideration. If maintaining living accommodations in an insured's home is in and of itself sufficient to establish where someone lives, there would be no need to consider issues such as whether separate households have been established and maintained, whether family members intend to discontinue membership in the household, and whether they have taken steps to remove themselves from the household."). Though the child may have been sixteen-months-old at the time of the accident and stayed during "most everyday" at her grandparents' house where she had a nursery, a bedroom and a separate

---

[8] Obviously, the relevant question is whether the child was a resident, or dual resident, at the time of the accident, not after. *See Rainey v. State Farm Mut. Auto. Ins. Co.*, 217 Ga. 618, 619, 458 S.E.2d 411, 412 (1995) ("Because the record does conclusively establish that [the plaintiff] maintained a separate household and was not living with [the insureds] *when the accident occurred*, we affirm the judgment of the trial court.") (emphasis added). Thus, to the extent the Whitakers argue that the child was a dual resident because she currently stays with her grandparents during "most everyday," that argument fails. That does, however, demonstrate further that Greg and Linda, like many good grandparents, frequently babysit their grandchildren.

playroom with toys, clothes, and baby food, these facts alone do not create a fact issue with regard to whether the child resided in her grandparents' home. In their affidavits, Laura and Linda state that the child "only stayed overnight a few times" at her grandparents' house. They do not state that the child *lived* with her grandparents. There is simply no evidence that the child did.

Moreover, the circumstances surrounding the Whitakers' stay at the time of the accident reveal no intent for the child to reside with her grandparents. It is undisputed that the Whitakers only planned on staying in the cabin temporarily until their new house was built. And neither the child's parents nor grandparents give any reason as to why the child would live with her grandparents. If the Whitakers had offered some basis for *why* the child was maintaining dual residency, perhaps the facts they now provide would be sufficient to create a fact issue. For example, if a child resided with her grandparents because her parents were having financial trouble, that could suggest dual residency. But that is not the case here, because the child's parents supported themselves and claimed their child as a dependent on their 2016 tax return while living in the cabin. Thus, though the crux of this issue of residency is factual, the undisputed facts clearly show that the child lived with her parents and that her parents had a typical, transient, and "convenient" babysitting arrangement with the grandparents—the retired grandmother would care for the child during most of the day while the parents were at work or otherwise needed someone to watch her.

While noting there are no Georgia cases addressing this precise issue of whether a minor child is a resident relative of her grandparents' household for purposes of insurance coverage, the Whitakers "suggest that Couch on Insurance, treatise can provide guidance with respect to the current issue." Doc. 37 at 12, 13. In particular,

they cite a section of the treatise which provides that, when determining a child's status as a resident of his or her parents' household, one factor to consider is whether there is a "continuing connection between the child and the parent," such that there is "evidence of continuity of existence or intended continuity of existence at the parent's home." STEVEN PLITT ET AL., COUCH ON INSURANCE § 128:8 (3rd ed. 2018) (citing cases).

Having reviewed the treatise and the cases referenced therein, the Court reaches the same conclusion. Actually, the Court's conclusion is further supported. As an initial matter, the Court notes that all of the cases that the Whitakers cite from the treatise involve dual residency issues of whether the child resided with parents or step-parents. *See generally Harper v. Vigilant Ins. Co.*, 433 F.3d 521 (7th Cir. 2005); *Felton v. Nationwide Mut. Fire Ins. Co.*, 163 Ohio App. 3d 436, 839 N.E.2d 34 (9th Dist. Summit County 2005); *AID Ins. Co. (Mut.) v. Armstrong*, 119 Idaho 897, 811 P.2d 507 (1991). Thus, these cases considered certain factors that are not applicable here, such as whether the insured was "legally obligated" to the child or whether the child resided with each parent under a custody or visitation arrangement. *See, e.g.*, *Armstrong*, 119 Idaho at 903, 811 P.2d at 513 ("Custody is just one of the many factors to consider when determining a child's residence."). The cases did, however, consider the factor of intent, which was examined in the context of whether an individual intended his stay in the insured's home to be "something of permanence or continuity" based on a continuing connection between him and the named insured. *Harper*, 433 F.3d at 527; *Armstrong*, 119 Idaho at 902, 811 P.2d at 512. The cases all determined there was no intent for the child to live with his or her parents or step-parents for purposes of insurance coverage. *Harper*, 433 F.3d at 527; *Felton*, 163 Ohio App. 3d at 441-42, 839 N.E.2d at 38; *Armstrong*, 119 Idaho at 903, 811 P.2d at 513.

Again, there is no evidence that the Whitakers intended for their daughter to live with her grandparents. While the child may have developed a "continuing connection" with her grandparents in the sense that the grandparents would frequently take care of her at their house, that is no different than any other child forming such connection with grandparents or frequent babysitters. The point is, the intent was for the child to stay at her grandparents' house in a babysitting arrangement, not permanently. Therefore, even construing the evidence in the Whitakers' favor as the non-movant, there is no genuine dispute of material facts that the child was not a resident of her grandparents' household at the time of the accident. Accordingly, the child is not entitled to the uninsured motorist benefits of her grandparents' insurance policy, and Travelers is entitled to judgment as a matter of law.

## VI. CONCLUSION

For the foregoing reasons, Travelers's motion for summary judgment (Doc. 34) is **GRANTED**.[9]

**SO ORDERED** this 30th day of August, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[9] Because Travelers's motion for summary judgment is granted, the Whitakers' motion to amend their answer (Doc. 31) is **DENIED as moot**.